# Richmond

TRAVELERS HEALTH ASSOCIATION, ET AL. V. COMMON-
WEALTH OF VIRGINIA, EX REL.

January 10, 1949.

Record No. 3425.

Present, All the Justices.

*Hunton, Williams, Anderson, Gay & Moore, H. Merrill Pasco* and *James A. Weems,* for the appellants.

*J. Lindsay Almond, Jr., Attorney General, Walter E. Rogers, Assistant Attorney General* and *Blake T. Newton, Jr.,* for the appellee.

STAPLES, J., delivered the opinion of the court.

This is an appeal from a cease and desist order entered by the State Corporation Commission on May 3, 1948. The order enjoined and restrained the appellants from offering, advertising, promoting, or selling certain membership certificates or contracts of indemnity or insurance in Virginia, until a permit or authorization so to do has been secured from the Commission as required by the Virginia Securities Act. (Chapter 529 of the Acts of Assembly 1928, as amended, generally known as the Blue Sky Law. See Michie's 1942 Code of Virginia, sections 3848(47) to 3848-(66) inc.).

Section 9 of the act requires every person, association, or corporation, desiring to engage in the selling or offering for sale of securities of this type in Virginia to apply for a permit so to do. Certain conditions must be complied with before a permit can be granted. Irrevocable consent must be filed that action or suit may be commenced against the permittee by the service of process on the Secretary of the Commonwealth, who, in turn, is required to transmit same by mail to the permittee. The applicant is also required to provide detailed information with reference to the solvency of the issuer of the securities and with respect to various other matters relating to the propriety of permitting their sale. The Commission is authorized to conduct such investigations as it may deem appropriate, and also see to the proper application of the proceeds from the sales of the securities. There are numerous other provisions, but the foregoing are sufficient for our purposes. The appellants do not deny that their membership contracts constitute "securities" within the meaning of the law, or that they are lawfully and properly so classified. Nor do they claim to have applied for or secured the required permit to sell them in Virginia.

Section 15 of the act (Michie's Code, section 3848 (61) ) provides that any person violating the act, or who shall fraudulently evade or attempt to evade the provisions thereof, shall be guilty of a misdemeanor, where not otherwise provided, and punished by a fine or confinement in jail, or both. Proceedings to enforce the penalties of such violations must be instituted by indictment or information in the appropriate courts of record of the State.

Section 6 of the act (Michie's Code, section 3848(52) ) authorizes the State Corporation Commission, upon its own motion, or upon complaint of any resident of the State of violation of the act, to issue a cease and desist order in the nature of a temporary injunction and restraining order against further violations, after at least ten days notice, by registered mail to persons, corporations, or associations upon whom personal service cannot be had because of absence

from the State. Signed receipt of the registered notice is required to be returned by the postal authorities.

Section 17 authorizes the Commission to impose a fine not exceeding five hundred dollars for failure or refusal to comply with any lawful order made under the act.

Pursuant to section 6, *supra,* this proceeding against the appellants was instituted by order of the Commission on May 5, 1947. They were charged with offering for sale and selling the securities in question without having procured the necessary permit or authorization and in contravention of the provisions of the Virginia Securities Act. Notices of the proceeding were sent to the appellants by registered mail, and the Post Office registry receipts, filed as exhibits, showed the delivery of same. The notice informed the appellants that at the time indicated they would be given an opportunity to be heard upon whether a cease and desist order would be entered against them.

The appellants appeared specially by their counsel "for the sole purpose of objecting to the alleged jurisdiction of the Commonwealth of Virginia and of its State Corporation Commission, and of moving to set aside and quash service of summons alleged to have been made upon said defendants, and for no other purpose." They challenged the jurisdiction of the State and of the State Corporation Commission upon two broad general grounds: first, that the appellants have conducted no business activities in Virginia, but have transacted their entire business outside the State through the mails; and, second, that, the order of the Commission being in its nature *in personam,* service of notice outside the State by registered mail is not sufficient to confer jurisdiction upon the Commission to take any action with respect to the appellants. The case was heard upon a stipulation of certain facts, and also upon exhibits introduced in evidence.

After the hearing the Commission entered the order complained of. It recited the finding by the Commission that the appellants had been engaging in the business of selling their securities in Virginia without complying with the

Virginia Securities Act and enjoined them from continuing such activities without such compliance.

It is settled beyond controversy, and not disputed by the appellants, that the regulation of the promotion and sale of securities is a proper exercise of the police power of the States. *Virginia Brewing Co.* v. *Webber*, 167 Va. 67, 187 S. E. 447; *Watters & Martin* v. *Homes Corp.*, 136 Va. 114, 116 S. E. 366. The purpose of laws regulating such promotions and sales is to protect the public against the imposition of fraudulent or unsubstantial schemes or projects, or from being misled into the purchase of securities based upon them. Such statutes do not conflict with or violate any provisions of the Federal Constitution. *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, Ann. Cas. 1917C, 643. Therefore, our first inquiry is directed to whether the activities of the appellants in the Commonwealth of Virginia have been such as to subject them to the State's regulatory power.

It appears from the stipulation of facts that the appellant, Travelers Health Association, is a nonprofit membership association incorporated under the laws of Nebraska, with its home office in Omaha. Letters and other exhibits filed in the case show that the appellant, R. E. Pratt, is a resident of Omaha, is treasurer of said association, and conducts its correspondence soliciting new membership contracts. The association has not now nor has it ever had any office, officer, or agent, or any bank account or property located in Virginia. At the time of the hearing it had in force in Virginia approximately eight hundred membership certificates which provided health insurance protection in the form of sickness benefit payments. It also admitted that it has caused many claims asserted by its Virginia members to be investigated in this State. The customary method of soliciting new memberships has been for the Virginia members of the association to recommend to it persons who they believe are likely propects. The association then writes these persons inviting them to make application for membership. All such letters are transmitted by mail from the United

States Post Office in Omaha. If upon the receipt of this letter the proposed applicant is so disposed, he fills out the application blank and sends it by mail to the home office of the association in Omaha, where it is received and acted upon.

The exhibits contained in the record include a letter from appellant Pratt, as treasurer of the association, addressed to a prospective member. The letter was accompanied by an application form containing twenty-six questions to be answered by the applicant, who is instructed after he has signed it to forward it "with membership fee to R. E. Pratt, Treasurer," Omaha, Nebraska. The application contemplates reference to a named person as to the applicant's character and standing. There also appears upon the application the following:

"MONEY BACK GUARANTEE"

"Our policies are issued subject to approval of the applicant. If not satisfactory they may be returned within ten days from date of issuance and all money paid thereon will be refunded promptly."

In addition to the foregoing, there was also enclosed with the letter of solicitation a separate printed "Absolute Guarantee" slip containing a provision in conformity with the one above quoted. On the face of this slip appears the following:

"NOTE—It is not necessary to show the name of anyone as recommending you, as you have already been recommended to us by one of our members."

On the reverse side of said guarantee slip appears a printed copy of a letter from one of the members of the association residing at Baltimore, Maryland. In this letter the member in question expresses thanks for the promptness with which the association had paid benefits on account of his recent illness, and concludes with the following statement: "I am working on several of my friends to get them to join and expect to send you several applications real soon."

The appellants insist that the foregoing facts are insuffici-

ent to show any activities on their part in Virginia which bring them within the regulatory jurisdiction of the Commonwealth. In their reply brief they state their position thus: "* * * as the Stipulation of Facts on which this proceeding is based clearly establishes, there has been no solicitation by any agent in this State and all of the activities complained of take place, not in Virginia, but at the corporate appellant's principal office in Omaha, Nebraska. It is there that all mailing is done by appellants, all applications accepted, all contracts made and all claims paid."

██ The stipulation shows, however, that practically all of the business of the association in Virginia originates with and is the result of the activities of its Virginia members. The extent of those activities is not clearly defined, but the action of the association in mailing to prospective members a copy of the letter received by it from its Baltimore member, stating that he was working on several friends and *expected to send in their applications*, constitutes an implied invitation, not only to send in the names of persons recommended for membership, but also to solicit and send in completed applications for membership. While the old members who are engaged in these activities of assisting in procuring new members have not been technically designated as agents of the association or specifically employed to solicit for it, nevertheless, its encouragement of same and acceptance of the fruits thereof constitute a ratification of their efforts in its behalf and renders it responsible therefor. The exhibits show also that the recommendation of the prospective member which is sent to the association by the old member is accepted without question and the prospective applicant is relieved of the usual requirement of furnishing any reference at all as to his qualifications for membership. It clearly appears that the association relies almost exclusively on these activities of its Virginia members to bring about an expansion of its Virginia business.

An additional Virginia activity lies in the fact that it has been customary for the appellant association to make investigations with respect to the validity of claims asserted

against it arising in the State. Such investigations obviously constitute an essential function of the health insurance business.

Remittances in payment of benefit claims are sent from Omaha, but they are received and accepted *in Virginia* as a discharge of the association's obligations. If they miscarry in the mails and are not received by the beneficiary, or, if received, are not accepted, the obligations are not discharged.

Moreover, the fact that the application is accepted in Nebraska and the membership certificate is forwarded to the Virginia applicant *subject to his approval* renders it merely an offer on the part of the association to enter into the contract with the applicant. It is not contended that the applicant has theretofore ever examined or even seen the membership certificate, and it is left entirely to him to determine, after he receives it, whether its provisions are satisfactory and he will accept it. If he is not satisfied, he returns the certificate and receives back the amount tendered in payment with his application. If on the other hand he approves the provisions of the certificate and accepts it, it is this act of acceptance in Virginia which consummates the contract.

The State Corporation Commission concluded that the foregoing activities of the appellants were such as to constitute violations of the Virginia Securities Act and to bring them within the jurisdiction of the State. It therefore ordered the appellants to cease and desist from any further continuation of such violations.

The appellants, however, take the position that such activities are not sufficient to subject them to the regulatory police powers of the State as set forth in the Virginia Securities Act and in the order of the Commission. They rely upon *Minnesota Commercial Men's Ass'n* v. *Benn*, 261 U. S. 140, 43 S. Ct. 293, 67 L. Ed. 573, and other similar cases, in support of their position that the appellant association is not engaged in business activities in Virginia such as to bring them within the jurisdiction of the courts of

this State. While the facts in the *Benn Case* were quite similar to those in the record before us, the action there under consideration was one brought in Montana *by a beneficiary of a contract* which was held by a Montana resident at the time of his death. A Montana statute provided that any corporation doing business therein, if no officer or agent be found in that State, could be served with summons upon the Secretary of State, "who shall be and is hereby constituted an agent and attorney in fact to accept service on behalf of such corporation, and service upon said secretary of state shall be deemed personal service upon said corporation." The court held that the Minnesota association was not doing business in Montana, and, therefore, the service of summons upon the Secretary of State did not constitute service upon the corporation so as to authorize the rendition of a *pecuniary civil judgment* against it.

The proceeding here before us, however, is essentially different in its nature. It was instituted, not by a contract holder, but by the Commonwealth. The appellants were being investigated by the Commission to determine whether their activities did in fact violate the Securities Act and constitute the commission in Virginia of a misdemeanor. The inquiry is quasi-criminal in its approach.

This distinction with respect to acts which violate State laws is clearly recognized in *Merrick* v. *Halsey & Co.*, 242 U. S. 568, 37 S. Ct. 227, 61 L. Ed. 498. In that case a Michigan District Court of the United States had entered a decree enjoining the enforcement of the Blue Sky Law of that State against a partnership composed of residents of New York and New Jersey. They were engaged in selling stocks, bonds, and other securities, *by mail* to persons in the State of Michigan, though they had no place of business or agents in the State. Upon appeal the Supreme Court reversed the District Court, dissolved the injunction and sustained the power of the State of Michigan to regulate their sales of securities *through the mails*.

In *International Harvester Co.* v. *Kentucky*, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479, process in a criminal

proceeding was served on a soliciting agent of the Harvester Company, which had been indicted for alleged violation of the antitrust laws of the State of Kentucky. The company contended that its activities within the State were not sufficient to subject it to the jurisdiction of the State courts. The claim of the company was that its agents were engaged exclusively in interstate commerce and, for this reason, were exempt from local regulatory control. Upon this question the court had the following to say:

"* * * The contention comes to this: so long as a foreign corporation engages in interstate commerce only, it is immune from the service of process under the laws of the state in which it is carrying on such business. This is indeed, as was said by the Court of Appeals of Kentucky, a novel proposition, and we are unable to find a decision to support it, nor has one been called to our attention.

\* \* \* \* \* \*

"We are satisfied that the presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the state, although the business transacted may be entirely interstate in its character. In other words, this fact alone does not render the corporation immune from the ordinary process of the courts of the state." (234 U. S., at pages 587, 588 and 589).

In the foregoing case, *criminal process* had been served on an agent of the company who had not been designated as an agent to receive summons on behalf of the company, but the validity of the service was, nevertheless, sustained by the Kentucky Court of Appeals, and this was affirmed by the Supreme Court.

The principal question presented here is whether the Commonwealth has jurisdiction to regulate appellants' sale of securities through the mails, supplemented by such other activities in the State as we have described. Where such sales are in violation of the regulatory provisions and constitute a crime under the laws of the State, are the violators

subject to the jurisdiction of the State to punish for such violations? In other words, does the Commonwealth possess the jurisdiction and power to deal with the commission of crimes of this nature within its borders and punish same, although the transactions are principally carried on from without the State through the United States mails?

The general rule is thus stated in 14 Am. Jur., Criminal Law, section 227:

"A question often arises as to the jurisdiction of a crime where the accused, while in one state, sets in motion a force which operates in another state, as where a shot is fired at a person across a state line or an injurious substance is sent to a person in another state with intent to injure him. In such cases the view has generally been taken that actual presence in a state is not necessary to make a person amenable to its laws for a crime committed there; for if a crime is the immediate result of his act, he may be made to answer for it in its courts, although actually absent from the state at the time he does the act. * * *."

In *In re Palliser*, 136 U. S. 257, 266, 10 S. Ct. 1034, 34 L. Ed. 514, 518, the following was said:

"When an offense is committed by means of a communication through the postoffice, the sender has sometimes, as appears by the cases cited for the petitioner, been held to be punishable at the place where he mails the letter." (Citing authorities.) "But it does not follow that he is not punishable at the place where the letter is received by the person to whom it is addressed; and it is settled by an overwhelming weight of authority that he may be tried and punished at that place, * * *." (Citing authorities).

*United States* v. *Steinberg*, 62 F. (2d) 77, involved the jurisdiction of a United States District Court of New York to indict and punish a defendant who was accused of using the United States mails to defraud. The letter in question was mailed in Canada, and the defendant claimed that he had not committed any criminal act within the State of New York and that court was without jurisdiction to try the offense. In affirming a judgment of conviction by the

District Court, the Circuit Court of Appeals of the Second Circuit used this language:

■ "* * * It has long been a commonplace of criminal liability that a person may be charged in the place where the evil results, though he is beyond the jurisdiction when he starts the train of events of which the evil is the fruit. *Strassheim* v. *Daily*, 221 U. S. 280, 284, 285, 31 S. Ct. 558, 55 L. Ed. 735; *Lamar* v. *United States*, 240 U. S. 60, 64, 65, 66, 36 S. Ct. 255, 60 L. Ed. 526; *Ford* v. *United States*, 273 U. S. 593, 620, 621, 47 S. Ct. 531, 71 L. Ed. 793. The constitutional question is frivolous." (62 F. (2d) 78).

The Supreme Court denied a writ of certiorari to review this case. *Steinberg* v. *United States*, 289 U. S. 729, 53 S. Ct. 526, 77 L. Ed. 1478.

Additional authorities to the effect that a person may be guilty of crime by reason of the use of the United States mails, and that the crime is deemed to be committed in the State where the mail is received and the prohibited results occur, are found in 22 C. J. S., Criminal Law, sections 134, 135. See also annotations in 42 A. L. R. 272; 43 A. L. R. 545; 141 A. L. R. 239, *et seq.*

■ We hold, in view of the authorities referred to, that the evidence in possession of the State Corporation Commission constituted good cause to conclude that the appellants had been engaged in selling securities in Virginia through the United States mail without complying with, and in violation of, the provisions of the applicable laws of the State.

In this situation, it seems that the Commission might have been justified in seeking an information or indictment in the appropriate court in accordance with the provisions of section 15 of the Virginia Securities Act. This section provides that violation of the act constitutes a misdemeanor, punishable by a fine or confinement in jail, or both. If such information were issued by the prosecuting attorney or indictment found by the grand jury, extradition proceedings might have been had under section 6 of the Uniform Extradition Act, which was adopted by Nebraska Laws 1935,

chapter 66, on May 23, 1935, and by the Acts of the General Assembly of Virginia, chapter 305, on March 28, 1940. This Uniform Act authorizes the Governor of Nebraska to grant extradition in cases where crimes are committed in another State, even though the accused was not in that State at the time of the commission of the crime and had not fled therefrom.[1]

■ Instead of resorting to an information or indictment, however, the Commission elected to proceed under section 6 of the Virginia Securities Act by giving notice to the appellants to show cause why a cease and desist order should not be issued by the Commission restraining them from making further sales of securities in Virginia in violation of its laws. This proceeding is somewhat analogous to the customary preliminary hearing, conducted in cases where an accused is suspected of having committed a felony, to determine whether the charge against him is supported by sufficient evidence to justify laying it before a grand jury. The chief difference is that, in the proceedings here under review, the question to be determined was whether the evidence justified a finding that the Virginia Securities Law was being violated and supported the consequent order to discontinue such violations. The Commission found that the evidence was sufficient to show that such law was being violated, and we concur in that view and in the propriety of the entry of the order requiring such discontinuance.

The appellants insist that the notice served on them by registered mail does not meet the requirements of due process

---

[1] The Uniform Extradition Act, according to the "Handbook on Interstate Crime Control," prepared by the Interstate Commission on Crime, at the time it was published in November, 1942, had been adopted in thirty-one of the States of the Union. Section 6 is as follows:

"Sec. 6. *Extradition of persons not present in demanding state at time of commission of crime.* The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state in the manner provided in section 3 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."

because they were not present within the State and the notice was served on them in Nebraska. It may be true that the business of the appellant association in Virginia has not been sufficiently extensive to justify the State in requiring it to appoint the Secretary of the Commonwealth as an agent upon whom process may be served at the suit of its Virgiina contract holders. We are not called upon here to decide that question. It has been said that under some circumstances to require a corporation to defend, away from its home, a suit not arising out of its transactions in the territory of the forum might "lay too great and unreasonable a burden on the corporation to comport with due process." See *International Shoe Co.* v. *State of Washington,* 326 U. S. 310, 317, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057.

Service of process upon nonresidents of a State by registered mail in appropriate cases is a well-established practice. We sustained the validity of a Virginia statute which imputes to one using the highways of the State an agreement that service upon such user may be had by serving the process upon the Director of the Division of Motor Vehicles of Virginia, the Director being required to send it to the nonresident defendant by registered mail at his last known address. We held that such process so served is sufficient to bring a nonresident within the jurisdiction of a Virginia court and amenable to its judgment in a civil action arising out of the negligent use of the highways. *Carroll* v. *Hutchinson,* 172 Va. 43, 200 S. E. 644. The validity of similar State statutes has been sustained by the United States Supreme Court. *Hess* v. *Pawloski,* 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091; *Wuchter* v. *Pizzutti,* 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 446, 57 A. L. R. 1230.

In *Wilentz* v. *Edwards,* 134 N. J. Eq. 522, 36 A. (2d) 423, notice by mail to a nonresident of a hearing, which arose under the Blue Sky Laws of New Jersey, was sustained as conforming to the requirement of due process.

In *International Shoe Co.* v. *State of Washington, supra,* the Supreme Court sustained the jurisdiction of the Washington State courts to entertain an action for the recovery

of unemployment compensation taxes arising out of salaries paid the agents of the company for their services in soliciting orders in the State, although the authority of the solicitors was strictly limited to taking orders and submitting them to the home office of the company in St. Louis, Missouri. In that case, Mr. Chief Justice Stone had the following to say:

■ "Historically the jurisdiction of courts to render judgment *in personam* is grounded on their *de facto* power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff*, 95 U. S. 714, 733, 24 L. Ed. 565. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' * * *

*      *      *      *      *      *

" 'Presence' in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. * * *." (326 U. S. 310, 316-317). And in connection with the question whether the substituted service gives reasonable assurance that the notice will be actual, the opinion continues:

"* * * * Nor can we say that the mailing of the notice of suit to appellant by registered mail at its home office was not reasonably calculated to apprise appellant of the suit. * * *." (326 U. S. 320).

■ We think the service of the notice by registered mail with the return postal receipt showing its delivery as required by the statute meets the requirements laid down in the *International Shoe Co. Case.* The only complaint which the appellants are called upon to answer in the pro-

ceeding prescribed by the statute is one involving the question of their violation of the laws of Virginia with respect to the sale of their securities. This is a question which cannot be tried by any tribunal save those of this State, and therefore the appellants are subjected to no undue inconvenience.

Nor do we think the proceedings instituted by the Commission offend "traditional notions of fair play and substantial justice." As we have pointed out, the Commission might have undertaken to proceed against the appellants by information or indictment and extradition. The present proceeding is a very much less onerous one and is more favorable to the appellants, in that they are afforded an opportunity, without being subjected to a criminal trial, to have determined by the Commission, by this court, and also by the Supreme Court of the United States, if they so desire, the question whether their conduct has been such as to violate the criminal laws of the State and subject them to the process of its courts.

Appellants also contend that the Virginia Securities Law, as applied by the Commission, is an unconstitutional attempt to regulate the use of the United States mails. We do not so construe the act. The effect of the order is to restrain the appellants from using the United States mails in such manner as to commit a criminal act in the State of Virginia. We do not believe it can be successfully contended that the postal service, which was established and is operated by the States in their joint capacity as the Government of the United States, can be held to operate as a shield to protect persons in the commission of crime in any of the several States, nor has any authority in support of such a proposition been called to our attention.

Appellants also take the position that Subchapter I of Chapter 2A of Title 15 of the United States Code, Annotated, manifests an intention by Congress, through the Securities Exchange Commission, to occupy the field of regulating the sale of domestic securities to the exclusion of the States. Section 77r, however, provides as follows:

"Nothing in this subchapter shall affect the jurisdiction of the securities commission (or any agency or office performing like functions) of any State or Territory of the United States, or the District of Columbia, over any security or any person."

It was clearly the intention of Congress to leave the States free to exercise such regulatory control over the sale of securities as does not conflict with the provisions of the Federal Act, and, in the absence of such a conflict, it is contemplated that the States and the Federal Government shall exercise concurrent jurisdiction in this field. The appellants have not pointed out any such conflict and we have been unable to discover any.

On the whole case, we are of opinion to affirm the order of the Commission.

*Affirmed.*