**Donald J. ILIFF, Appellant,**

v.

**AMERICAN FIRE APPARATUS COMPANY, INC., and American Fire Pump Company, Inc., Appellees.**

**No. 8020.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 20, 1960.

Decided April 13, 1960.

Norbert J. Heubusch, Washington, D. C., (Andrew B. Ferrari, Arlington, Va., on the brief) for appellant.

Fred C. Alexander, Jr., and E. Waller Dudley, Alexandria, Va., (Boothe, Dudley, Koontz & Boothe, Alexandria, Va., on the brief) for appellees.

Before SOPER and HAYNSWORTH, Circuit Judges, and BARKSDALE, District Judge.

SOPER, Circuit Judge.

This suit was brought by a volunteer fireman who was injured in fighting a fire in Fairfax County, Virginia, when a portion of the equipment mounted on a fire truck which he was using blew out and struck him with great force and violence. The fire truck and the apparatus had been sold to the Fairfax Volunteer Fire Department by the American Fire Apparatus Company, a Michigan corporation, one of the defendants, and the charge is that it had been negligently and unsafely designed, manufactured, and installed by the American Fire Apparatus Company and the American Fire Pump Company, which is also a Michigan corporation. The present appeal does not go to the merits of the controversy but is taken from an order of the District Court dismissing the complaint on the ground that there was no proper service of process on the defendants. Service of process was made upon the defendants on May 14, 1959, under Title 8–60 of the Code of Virginia of 1950, 1957 Replacement Volume, by serving the resident agent of Glenn D. Culbert, Inc., a Maryland corporation, on the theory that Culbert was the agent of the defendant in Virginia, and also by serving the Clerk of the State Corporation Commission of Virginia, on the theory that the defendants were foreign corporations doing business in Virginia. Motion was made by the defendants to quash the service on the grounds that Culbert was not the agent of the defendants and that the defendants were not doing business in the state. The District Judge, after hearing the undisputed testimony summarized below, sustained these contentions and ordered that the service of process be quashed.*

The American Fire Apparatus Company is in the business of manufacturing and selling fire engines at Battle Creek, Michigan, where its principal place of business and its executive offices are located. It also has a manufacturing plant in Marshalltown, Iowa. It has no sales force of its own but relies for the distribution of its products on twenty independent agencies throughout the United States, which operate on a commission basis and in most matters are not controlled by the manufacturer. One of these agencies is the Glenn D. Culbert Company, a Maryland corporation, qualified to do business in Virginia. By a letter of April 18, 1950, it was assigned a territory on an exclusive basis comprising the States of Maryland and Delaware and certain counties in New Jersey, Pennsylvania, Virginia and West Virginia, including Fairfax County, Virginia. Aside from this letter there was no formal contract between the parties.

Culbert conducts an independent manufacturers sales agency with headquarters at College Park, Maryland. It represents in this capacity manufacturers of various types of fire fighting equipment, including the defendants in this case, and it also acts as a jobber and buyer for fifty to one hundred manufacturers in various parts of the country. Its activities as sales representative for American Fire constitute only a small part of its business. It carries in stock various kinds of fire fighting equipment which it sells to various companies for maintenance or emergency situations. It also maintains a shop at College Park equipped to repair apparatus which it sells. It maintains its own sales staff to promote its own sales and the sales of its clients and sometimes sells the fire fighting apparatus of other manufacturers.

Culbert has no authority to enter into contracts on behalf of American Fire.

---

* The following recital of facts is confined to the relationship between American Fire Apparatus Company and Culbert, since it is conceded that the relationship between American Fire Pump Company was no closer. Indeed the record indicates that the Pump Company was not incorporated until after the engine involved in the accident was sold by the Apparatus Company to the Fairfax Volunteer Fire Department.

It submits bids on the defendant's behalf to prospective purchasers, computing the sales price from the defendant's price lists, and if the price is acceptable to the buyer, forwards the proposal to Battle Creek for acceptance or rejection by the defendant. The parties to an executed contract are the local fire company and the defendant. Culbert is not a party to the contract and its compensation is computed on a commission basis.

American Fire invoices the sale directly to the purchaser and payment is made by check, payable in most cases to American Fire but sometimes delivered to Culbert by the purchaser. If the checks are made to the order of Culbert they are endorsed by it to American Fire and mailed to Michigan. Culbert's commissions on the sale are not deducted at the time of payment but are paid by American Fire to Culbert at some later date.

All equipment is made-to-order and delivered from six to nine months after acceptance of the contract. The method of delivery varies and although prices are quoted f. o. b. Michigan the contract, as in this case, usually requires delivery to the location of the purchaser. If the company delivers the equipment a separate charge is added to the cost, and if this procedure is followed the defendant may employ Culbert to make the delivery.

Two features of these transactions are stressed in support of the plaintiff's contention that American Fire is engaged in doing business in Virginia. Each contract of sale includes the agreement on the part of the manufacturer to promptly test the apparatus and the agreement on the part of the purchaser to accept it if in accordance with the contract. The agreement does not require the test to be made at the purchaser's location and the apparatus is in fact tested at the factory before delivery in order to meet the specifications of the National Board of Fire Underwriters. The apparatus must also gain the approval of the local underwriters, and in some instances they conduct tests which are attended by Culbert's employees. Culbert also demonstrates the apparatus and works with the firemen until they understand the operation.

Each contract also contains a warranty of the manufacturer that the apparatus is free from defects in material and workmanship under normal use and service, the obligation of the warranty being limited to making good at the factory any part which shall within one year after delivery be returned to the defendant. Culbert participates in making this warranty effective although is not required to do so. Its plant at College Park is equipped to render service in this connection. In practice it makes minor repairs at its own expense when the equipment proves defective and in case of serious defects, it arranges for the shipment of new parts from the defendant to the fire department and supervises their installation. There is no contract between Culbert and the defendant with respect to this matter. If only minor repairs are required, Culbert makes them without communicating with the defendant and without compensation; but if Culbert makes major repairs the defendant would pay for them.

The point for decision is whether American Fire, under the facts recited, was doing business in Virginia within the meaning of § 8–60 of the Virginia Code governing the service of process on foreign corporations on and after July 1, 1958. This statute provides that if foreign corporations doing business or transacting affairs in the state has no registered agent in the state, process may be served on any agent of the corporation in the city or county in which he resides or in which his place of business is, or on the Clerk of the State Corporation Commission. It has been widely settled that, in interpreting the language of the process statute of a state, the federal courts are bound by the decisions of the state courts. See Westcott-Alexander, Inc. v. Dailey, 4 Cir., 264 F.2d 853; Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193; Latimer v. S/A Industrias, etc., 2 Cir., 175 F.2d 184, 186; Partin v. Michaels Art Bronze Co., Inc., 3 Cir., 202 F.2d 541; Albritton v. Gen-

eral Factors Corp., 5 Cir., 201 F.2d 138; Cincinnati Shoe Mfg. Co. v. Vigorith, 6 Cir., 212 F.2d 583; Canvas Fabricators, Inc. v. William E. Hooper & Sons Co., 7 Cir., 199 F.2d 485; Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 18 A.L.R.2d 179. See also Rule 4(d) (7) F.R.Civ.P., 28 U.S.C.A.

Recent decisions of the Supreme Court of Virginia generally adhere to the view that mere solicitation of orders by a foreign corporation does not amount to the doing of business in a state within the meaning of its process statute. That court, however, does not ignore federal decisions on the point but relies in great part on decisions of the Supreme Court of the United States. See Tignor v. L. G. Balfour & Co., 167 Va. 58, 187 S.E. 468; Carnegie v. Art Metal Construction Co., 191 Va. 136, 60 S.E.2d 17. Thus, in Tignor, a foreign corporation was held not to be doing business in Virginia in the statutory sense. It sold its products through salesmen who sent orders to the home office for approval under the general supervision of a resident district manager, who had an office in the state on which the company's name was displayed. Again, in Carnegie, lack of jurisdiction was found in the case of a foreign corporation which distributed its products through sixteen local dealers or licensees who purchased the goods on consignment for resale. The company supplied the dealers with catalogues and advertising material and employed a regional sales representative, who visited the state and instructed the dealers in the handling of the goods.

In our own court similar problems have been submitted for solution. In Kahn v. Maico Co., 4 Cir., 216 F.2d 233, we held a foreign corporation liable to suit which kept control of its local dealer in various ways, including the requirement that he make reports as to the details of the sales and maintain a service establishment so as to carry out the provisions of the company's guarantee which accompanied each sale by the dealer. On the other hand, in Rock-Ola Mfg. Corp. v. Wertz, 4 Cir., 249 F.2d 813, we concluded that a Delaware manufacturing corporation was not doing business in Virginia within the meaning of the statute although it entered into annual contracts on a consignment basis with a local distributor, who was required to maintain attractive showrooms and office facilities as well as a repair and service establishment for the manufacturer's machines. These facts were held insufficient to establish such a control over the distributor so as to make his acts the acts of the manufacturer.

The whole subject has been carefully considered by Judge Haynsworth, speaking for this court, in Westcott-Alexander, Inc. v. Dailey, 4 Cir., 264 F.2d 853, where it was held that a foreign corporation engaged in the sale of heating systems was doing business in Virginia. The corporation maintained an agent in the state whose primary duty was the solicitation of business, but he also planned heating systems and supplied drawings for their installation in houses under construction. In sustaining jurisdiction of the federal court in Virginia over a suit against the corporation for furnishing faulty equipment, reference was made in the opinion to the countless decisions in which it has been held that mere solicitation of orders in a state is insufficient to subject a foreign corporation to the service of process; but it was also shown that in more recent decisions of the Supreme Court, notably International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, it has been held that jurisdiction over a foreign corporation may sometimes be maintained in a state although the local activities of the corporation are primarily concerned with the solicitation of orders.

In that case the corporation maintained its principal place of business in the State of Delaware, but it had no office, maintained no stock of goods, and made no contracts in the State of Washington where the suit was brought. It was nevertheless held to be doing business in Washington and therefore amenable to the process of its courts because over a period of years it employed a

dozen resident salesmen on a commission basis, under the supervision of a sales manager in Missouri, and furnished the salesmen with samples for occasional exhibition in places rented for the purpose. The regular and systematic procurement of orders in this fashion resulted in a continuous flow of the corporation's products into the state so that it was thought to have established such contacts within the state as to make it reasonable and just and in accordance with the requirements of due process to permit the state to enforce the obligations that the corporation had incurred within its borders.

■ It is significant, as Judge Haynsworth pointed out, that this decision was cited with approval and extensively quoted from by the Supreme Court of Appeals of Virginia in Travelers Health Ass'n v. Commonwealth of Virginia, 188 Va. 877, 51 S.E.2d 263; and hence it may be that, under like circumstances, jurisdiction of actions against foreign corporations will be recognized today in the Virginia courts. It is our opinion, however, that under the particular circumstances of the instant case the conclusions of the District Court should be upheld. Culbert was in no sense the employee of American Fire but conducted an independent manufacturers agency of its own. It represented as a sales agent not only American Fire but many other organizations for whom it did the greater part of its business. While it solicited orders for American Fire and forwarded them for acceptance or rejection, it was not subject to the control of the foreign corporation in the exercise of its functions. Nor do we think that Culbert's actions in the routine testing of the fire engines after delivery and in remedying occasional defects in the apparatus were of such a character as to indicate the "presence" of the foreign corporation in the state. In this respect we are in agreement with the finding of the District Judge that Culbert's services, although of undoubted advantage to the manufacturer, were not rendered under a contract with the manufacturer but rather as an accommodation to the purchaser to sustain its own position as a reliable and effective broker. This is borne out by the testimony which shows that Culbert received no specific compensation for these activities and took care of minor repairs or replacements free of charge and remedied major defects at its own repair shop, making such charge to American Fire as was deemed reasonable by both parties associated on friendly terms in a business enterprise. It is not unreasonable to conclude that the activities were Culbert's rather than American Fire's. Hence we conclude, recognizing the difficulty in many instances of deciding whether a corporation has entered the state in such a fashion as to be present in the conduct of its business, that the line was not crossed in this case.

Affirmed.