LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Commonwealth Distributing Co., Inc.

v.

Hans Holterbosch, Inc.

December 4, 1968

By JUDGE ALEX H. SANDS, JR.

Testimony taken upon the motion to quash the service of process against defendant Hans Holterbosch, Inc. discloses that defendant is a New York corporation, organized for the purpose of, and engaged in the business of, taking and filling orders of local wholesale distributors in various states for beer brewed and bottled in Munich, Germany. In essence defendant's status is that of a broker. Compare defendant's method of operation with that of Glen D. Culbert in the case of Iliff v. American etc., Co. 277 F.2d 360. Defendant's modus operandi, though unique, is quite simple. It solicits orders from various local distributors which, when accepted by defendant, are forwarded to Munich, Germany, where they are filled and shipped to the port of entry in the United States closest to the locus of the distributor. The sale is actually between defendant and the distributor, the latter having no contact with the brewing firm in Munich. Defendant is represented in Virginia and in other states where it solicits orders from beer wholesalers by employees designated as "Regional Managers" operating under a "Division Manager." Since July 1, 1968, three such regional managers have been issued "solicitor-salesman" permits as representatives of defendant by the Alcoholic Beverage Control Board

of the State of Virginia. (See Pl. Ex. # 1). The function of these division managers is ostensibly to "maintain liason" between defendant and local wholesalers. Their actual duties, however, entail taking of orders from the wholesalers (which are forwarded to defendant for acceptance), ascertaining that the inventory of Lowenbrau beer of the distributor is maintained at the level "recommended" by defendant, occasionally accompanying the distributor in good will calls among the trade, inspecting for defendant any damage to barrels claimed by wholesalers to have resulted in shipment, conducting sales promotions meetings in Virginia for the purpose of pushing Lowenbrau beer and similar activities. It is conceded that defendant has no plant, warehouse, office, bank account or inventory of merchandise held for sale in Virginia nor are any of its directors or officers residents of, nor do they work in, the State of Virginia.

This suit was instituted by plaintiff, a Richmond wholesaler, seeking to enjoin the termination by defendant of its alleged oral contract with plaintiff for the distribution of Lowenbrau beer in this area. Service was had on defendant by delivering the process to the Clerk of the State Corporation Commission under Section 8-60 of the Code of Virginia, and defendant has moved to quash this service on the ground that it cannot be reached by the process of the Virginia Court.

The issues raised by defendant's motion are whether defendant has, by its activities, subjected itself to the jurisdiction of the Virginia Court and if so, whether the Virginia statutes authorize service on a foreign corporation engaged in activities of the nature above outlined.

The time honored concept of the necessity of physical presence of a corporation within the state in order to be reached by process, Pennoyer v. Neff, 95 U.S. 714, 24 L. Ed. 565 (1878); Green v. C.B. & Q. Ry., 205 U.S. 530, 51 L. Ed. 916 (1906), has been drastically eroded by the International Shoe decision,

International Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95 (1945), which has substituted a flexible standard for determining what constitutes "doing business" for the former unbending standard. In this case a Delaware corporation sold its products through sales solicitors in the State of Washington who, as in the case at bar, could only solicit orders and forward them to the Delaware corporation for acceptance. The State of Washington sued in the state court to recover a tax based on the activities of the soliciting salesmen. The Delaware corporation insisted that its activities through its solicitors did not constitute "doing business," relying upon the traditional time honored concept that mere solicitation with only slight activity incidental thereto would not render the foreign corporation liable to state process. The Supreme Court, discarding the old theory of the necessity of corporate "presence" enunciated the following concept which it held to be based upon the modern trend of "fair play":

> The criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. . . .

> Whether due process is satisfied must be handled rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. . . .

> To the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit or to enforce them can, in most

instances, hardly be said to be undue. . . .

It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional concept of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there. (Emphasis added)

The current rule of the Federal Courts appears to be that it is not a violation of due process where the solicitation of sales has been systematic and continuous to permit a foreign corporation to be sued in such state on obligations arising out of or connected with such sales or activities. See opinion of Circuit Court of Princess Anne County reported in Virginia Bar News, Vol. XI, No. 11, at page 6.

International Shoe has been approved by the Virginia Supreme Court of Appeals. See Travelers Health Ass'n v. Commonwealth, 188 Va. 877 (1949).

The degree of control which a foreign corporation exercises over the local dealer plays an important part in determining whether the foreign corporation which is only soliciting sales in a state is or is not doing business. Cf. Kahn v. Maico Co., 216 F.2d 233, with Rock-ola Mfg. Corp. v. Wertz, 249 F.2d 813.

While it is true that both the Tignor case, Tignor v. Balfour, 167 Va. 58 (1936), and Carnegie, Carnegie v. Art Metal Const. Co., 191 Va. 136 (1950), hold that the mere solicitation of sales alone does not constitute "doing business," the element of control of the local dealer's business by the nonresident corporation was significantly lacking in both cases.

In the case at bar it is abundantly clear from Pl. Ex. # 2 and Ex. # 3 that defendant dictated in no uncertain terms the level of inventory which plaintiff-was required to maintain. While the witness Parcher stoutly denies the exercise of any such control by

defendant company over plaintiff, yet it is perfectly clear from plaintiff's Ex. # 2 that defendant exercises complete control over the manner in which plaintiff maintains his inventory. This exhibit fully supports the witness Francis's statement that any distributor who doesn't obey defendant's mandate as to inventory procedures will be "cancelled out."

The evidence introduced on the motion to dismiss establishes to the Court's satisfaction that the activity of the defendant in dealings with plaintiff and with other distributors clearly constituted the "doing of business" within the state and the service of process upon the Clerk of the State Corporation Commission was good.

The motion to dismiss will accordingly be over-ruled.