**UNITED STATES of America, Appellee,**

**v.**

**Jim H. GAY–LORD, d/b/a Mackey's Net & Rope Company, Inc., Appellant.**

**No. 85–5186.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 10, 1986.

Decided March 10, 1986.

Maynard A. Harrell, Jr., Plymouth, N.C., for appellant.

Leslie M. Kannan, U.S. Dept. of Justice, Land and Natural Resources Div. (F. Henry Habicht II, Asst. Atty. Gen., Washington, D.C., Samuel T. Currin, U.S. Atty.,

---

Raleigh, N.C., William D. Delahoyde, Asst. U.S. Atty., James C. Kilbourne, Robert Klarquist, Washington, D.C., on brief), for appellee.

Before RUSSELL and PHILLIPS, Circuit Judges, and SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.

PER CURIAM:

Jim Gay-Lord appeals his conviction of felony and misdemeanor violations of the Lacey Act, 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), 3373(d)(2). Following a jury trial in the United States District Court for the Eastern District of North Carolina, Gay-Lord was found guilty of engaging in interstate commerce in striped bass (rockfish) in violation of regulations and statutes of the Commonwealth of Virginia. We affirm his conviction.

I

■ The Lacey Act, as amended in 1971, prohibits interstate commerce in fish or wildlife taken, possessed, transported, or sold in violation of any state law or regulation. 16 U.S.C. § 3372(a)(2)(A). Violations of the Act are punishable as either misdemeanors or felonies, depending on the market value of the fish or wildlife involved and the level of scienter of the violator. Gay-Lord's conviction is based on violations of Virginia statutes and regulations that prohibit the taking, purchase, or sale of bass taken from inland waters in Virginia. *See* Va.Code §§ 29–148, –164 (1985); Va. Comm'n Game & Inland Fisheries Reg. R1–4, R23–4 (1983).

During 1983 and 1984, the United States Fish and Wildlife Service (FWS) engaged in an undercover investigation of illegal commercial traffic in rockfish taken from inland lakes in Virginia and North Carolina. The testimony at Gay-Lord's trial indicated that in February 1984, an FWS agent had dealings with Gay-Lord at his place of business in Mackey's, North Carolina. Gay-Lord and the agent discussed the possible purchase by Gay-Lord of rockfish from Kerr Lake, an interstate lake on the border of Virginia and North Carolina.

On February 20, 1984, another FWS agent purchased 105 pounds of rockfish, taken in Virginia from Kerr Lake, from a Virginia citizen who brought them to Henderson, North Carolina. On February 21, two FWS agents took the fish to Gay-Lord's place of business. Their testimony at trial was that Gay-Lord measured the fish, discussed the importance of rockfish size for the various markets for the fish in New York and Baltimore, and purchased 94 pounds of rockfish from the agents. Business records established at trial that on the same day that Gay-Lord purchased 94 pounds of rockfish from agents, he sold 95 pounds of similarly sized rockfish to the Quality Seafood Company (Quality) in Elizabeth City, North Carolina. At that time, Quality made its rockfish shipments primarily to markets in Baltimore, Philadelphia, and New York, and the company's records indicate that the fish purchased from Gay-Lord on February 21, 1984, were shipped to Philadelphia and New York City.

FWS agents bought more rockfish taken from Kerr Lake on March 15, 1984. This purchase of 464 pounds of fish was made in Palmers Point, Virginia. The next day, FWS agents transported 330 pounds of the fish to Gay-Lord's place of business. Again, trial testimony indicated, Gay-Lord spoke to the agents and discussed the significance of large and small rockfish for markets in New York and Maryland. Gay-Lord purchased all 330 pounds of rockfish from the agents, and records showed at trial that later that day he sold 295 pounds of rockfish to Quality, which again shipped them to northern markets.

Gay-Lord was indicted for various Lacey Act violations, and found guilty, upon a jury verdict, of one misdemeanor and one felony count.

II

Gay-Lord's principal argument on appeal is that the evidence at trial did not sufficiently show a Lacey Act violation because

the government, for each of the rockfish transactions, supplied the interstate element of the offense. The Act makes it illegal to "import, export, transport, sell, receive, acquire, or purchase in interstate commerce" fish "taken, possessed, transported, or sold" in violation of state laws or regulations. 16 U.S.C. § 3372(a)(2)(A). Even were we to accept Gay-Lord's argument that he did not violate the Act when he purchased the fish, because government agents brought the fish or caused them to be brought to North Carolina from Virginia,* Gay-Lord's conviction is independently supported by evidence before the jury that Gay-Lord sold illegally taken rockfish *in interstate commerce* when he sold them to Quality. Gay-Lord, according to testimony properly before the jury, knew that the rockfish would be transported in interstate commerce and took the steps that began their travel to interstate markets. The sales by Gay-Lord to Quality constitute Lacey Act violations independent of Gay-Lord's act of purchasing the fish from government agents.

### III

 Upon consideration of Gay-Lord's other assignments of error, we find them to be without merit. He contends that his indictment contained a reference to a repealed Virginia regulation, but alleges neither prejudice nor inadequacy of the other statutory and regulatory references in the indictment. Finally, Gay-Lord urges that the government failed to show the requisite violations of Virginia law because his acts occurred in North Carolina, where Virginia law was not in effect. It is not necessary to proof of a Lacey Act violation that the state law violated be violated in that state. *See United States v. Bryant,* 716 F.2d 1091 (6th Cir.1983) (fox illegally taken in North Carolina sold in Tennessee); *United States v. Sylvester,* 605 F.2d 474, 475 (9th

Cir.1979) (it does not matter for purposes of the Lacey Act whether the sale takes place before or after transportation of the wildlife in interstate commerce). The sales in North Carolina of rockfish taken in Virginia supplied the violations of Virginia statutes and regulations necessary to support Gay-Lord's conviction under the Lacey Act.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

* Gay-Lord's contention on this point is, in any event, a most dubious one. FWS agents testified that Gay-Lord expressed his awareness that the fish were taken from Virginia and his willingness to purchase them despite his knowledge that such commerce was illegal. This case is

unlike *United States v. Archer,* 486 F.2d 670 (2d Cir.1973), where the interstate element of an invalidated Travel Act conviction was supplied by government agents to a transaction otherwise completely local in character.