**UNITED STATES of America,**

v.

**Ray Dayton DOVE, Jr., Defendant.**

**No. CR. A. 99–0020–C.**

United States District Court,
W.D. Virginia,
Charlottesville Division.

Sept. 29, 1999.

Jean Barrett Hudson, U.S. Attorney's Office, Charlottesville, VA, for U.S.

Frederick Theodore Heblich, Jr., Parker, McElwain & Jacobs, P.C., Charlottesville, VA, for Ray Dayton Dove, Jr.

*MEMORANDUM OPINION*

MICHAEL, Senior District Judge.

### I.

Before the court is the defendant's August 9, 1999 "Motion to Dismiss Indictment." Defendant Ray Dayton Dove was indicted by the grand jury on March 11, 1999 and charged with three counts of violations of the Lacey Act, 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), involving the unlawful sale of wildlife. Dove seeks to dismiss count three of the indictment. For the reasons discussed below, the court denies the defendant's motion.

### II.

FACTS

Dove is a resident of Petersburg, West Virginia, where he owns and operates his business, Dove's Fur. He is a federally-licensed firearms dealer and also is licensed to deal in ginseng, wild furs, hides, bears, deer horns and herbs by the state of West Virginia. During the hunting season, Dove operates his business as a licensed game check station and it is in this capacity that he acquires hides, furs, and wildlife parts, such as black bear gall bladders, from hunters.

Agent W.K. Stump of the Virginia Department of Game and Inland Fisheries initiated the investigation of Mr. Dove in October 1998. Using an alias, Stump left a note for Dove that led to a number of telephone conversations between Stump, at his residence in Virginia, and Dove, at his business and home in West Virginia, regarding the sale of black bear gall bladders. During their initial telephone conversation, Stump and Dove made a deal for the sale of black bear gall bladders to Stump. On October 22, 1998, Dove met Stump in Washington County, Virginia, where he gave him eleven gall bladders in exchange for $1400 cash. Count one of the indictment is based on this sale of gall bladders to Stump. Additional telephone conversations between the two men and a second sale followed the October 22 sale. Dove shipped two sets of gall bladders to Stump at his covert business address via UPS to complete the second sale. Stump received these shipments on November 25, 1998 and December 10, 1998. Count two of the indictment is based on Dove's shipment of gall bladders to Stump in Virginia. For purposes of the motion to dismiss, however, the court is most concerned with the facts relevant to count three of the indictment.

Following his receipt of the UPS shipments, Stump telephoned Dove at Dove's Furs in West Virginia on January 6, 1999. Dove knew that Stump was calling from Virginia because he identified himself as he usually did, using his alias, followed by the location "down at Rich Lands, Tazewell," in Virginia. During the course of this conversation, Stump and Dove negotiated the terms of a large purchase of gall bladders and also discussed the illegality of selling gall bladders in Virginia. Stump also telephoned Dove on two subsequent dates, January 13 and January 14. Each time, Stump called Dove from Virginia and they negotiated the terms of the sale of the gall bladders, such as price and quantity. On January 14, they agreed on a final price and quantity, the sizes of the galls, the location, date, and time of the exchange, the form of payment, and other details. According to plan, Stump arrived at Dove's place of business in Petersburg, West Virginia on January 18, 1999 at about 12:30 pm to purchase the gall bladders. Dove and Stump completed the previously agreed upon exchange: 25 pounds of galls at $280 per pound. In addition, upon Stump's request for additional galls, Dove offered to sell Stump an additional six galls for $100. Stump paid Dove a total of $7100 for all of the bear gall bladders.

### III.

DISCUSSION

Count three of the indictment against Ray Dayton Dove charges:

That on or about January 18, 1999, ... [Dove] did knowingly engage in conductthat involved the sale, purchase of, offer of sale, purchase of, intent to sell andintent to purchase wildlife with a market value in excess of $350: to wit, blackbear gall bladders, and did knowingly sell, receive, acquire, and purchase saidwildlife in interstate commerce, knowing that said wildlife was taken, possessed,transported and sold in violation of and in a manner unlawful under

the laws andregulations of the Commonwealth of Virginia, specifically Virginia Code, Section29.1–553.

Such conduct is "in violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(B)." A violation of the Lacey Act, 16 U.S.C. § 3372, relies on an underlying state law violation. The defendant asserts that this court should dismiss count three because he had legally acquired and possessed in West Virginia all of the galls that he sold to Agent Stump in West Virginia on January 18, 1999. Unlike in the transactions that form the basis of counts one and two, Dove argues that did not sell the bear galls in Virginia and thus did not violate Virginia law. Thus there is no underlying violation of state law to support a conviction under count three.

The government, on the other hand, asserts that Dove did violate Virginia law by knowingly selling bear galls via telephone in Virginia. The United States contends that Stump and Dove negotiated the sale via telephone in both Virginia and West Virginia. Also, the United States argues that Dove knew that immediately after the sale Stump would transport the galls in interstate commerce and sell them outside of West Virginia.

### A.

■ Under Federal Rule of Criminal Procedure 12(b), a court may dismiss an indictment where there is an infirmity of law in the prosecution. *See United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir.1987). A court, however, may not dismiss an indictment on a determination of facts that should be developed at trial. *Id.* The court should regard all well pleaded facts as true when considering a motion to dismiss an indictment. *United States v. South Florida Asphalt Co.,* 329 F.2d 860, 865 (5th Cir.1964), *cert. denied,* 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964). If the facts constitute a criminal offense, the court should not dismiss the indictment.

*Id.* In the present case, there is no dispute as to the facts of the case.[1]

In *Russell v. United States,* the United States Supreme Court recognized that an indictment must perform certain essential functions that are of great importance to the protection of persons accused of crimes. 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The Court formulated the criteria for a court to consider in evaluating a challenge to an indictment. *Id.* at 763–64, 82 S.Ct. 1038. First, a court looks at "whether the indictment contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet." *Id.* at 763, 82 S.Ct. 1038 (internal quotations omitted). Second, "in case any other proceedings are taken against him for a similar offense," a court takes into account "whether the record shows with accuracy to what extent he may plead a former acquittal or conviction." *Id.* at 764, 82 S.Ct. 1038.

In the present case, the court is concerned with the first criterion—whether the indictment contains the elements of the offense charged. This court must determine whether all of the elements necessary to prove a violation of the Lacey Act are present, including an underlying violation of Virginia law.

**B.**

The Lacey Act, Title 16, U.S.C. § 3372(a), states in pertinent part:

It is unlawful for any person -

(2) to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce -

(A) any fish or wildlife taken, possessed, transported or sold in violation of any law or regulation of any State or in violation of any foreign law.

16 U.S.C. § 3372(a) (1994). The language of § 3372(a)(2)(A), specifically the phrase "in violation of any law or regulation of any State or in violation of any foreign law," makes it clear that a violation of this section of the Lacey Act is predicated on a state or foreign law violation. For example, it is not unlawful for a person to sell in interstate commerce wildlife that can be sold legally under the laws of both the seller's and the buyer's states of residence.

The underlying state law violation charged in count three of the indictment is of Virginia Code § 29.1–553, which provides in relevant part:

Any person who offers for sale, sells, offers to purchase, or purchases any wildbird or wild animal, or any part thereof, or any freshwater fish, except as providedby law, shall be guilty of a Class 1 misdemeanor. However, when the aggregateof such sales or purchases or any combination thereof, by any person totals $200or more during any ninety-day period, that person shall be guilty of a Class 6 felony.

VA.CODE ANN. § 29.1–553 (Michie 1997). As of January 18, 1999, there was no Virginia law that provided for the sale of black bear gall bladders. Therefore, the sale or offer for sale of bear galls in Virginia on January 18, 1999 violates Virginia Code § 29.1–553. It is undisputed that Dove violated this Virginia law when he sold the bear galls to Stump while present in Virginia and through the mail in Virginia, as alleged in counts one and two of the indictment. The conduct that is the basis of the charge in count three, however, took place over the telephone between West Virginia and Virginia.

Two elements must exist to comprise a violation of the Lacey Act. First, wildlife must be taken, possessed, transported or sold in violation of a state or foreign law. Second, the wildlife must be imported, exported, transported, sold, received, acquired or purchased in interstate or for-

---

1. Prior to the August 25, 1999 hearing on the defendant's motion to dismiss count three of the indictment, both the United States and the defendant admitted that, for the purposes of this motion, no material facts are in dispute.

eign commerce. *See United States v. Romano*, 929 F.Supp. 502, 504 (D.Mass. 1996). In this case, the court finds that Dove did violate Virginia Code § 29.1–553, thus there is no element missing from the indictment and it does not contain a defect in the law.

## C.

■ Dove violated Virginia law by forming a contract for sale while speaking on the telephone to a prospective buyer in Virginia. The telephone conversations between Dove and Stump and the subsequent activity of the two men constitute a "sale" in Virginia. Virginia's version of the Uniform Commercial Code provides that:

> (1) a contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

VA.CODE ANN. § 8.2–204 (Michie 1991). Both Dove and Stump engaged in conduct sufficient to show an agreement of sale. They discussed the final details of the sale, including price, quantity, time, date, and place during their phone call on January 14, 1999. Also, as Dove prepared the galls before Stump arrived and Stump traveled to the agreed location, both parties demonstrated their recognition that an agreement for sale existed as a result of their telephone conversations. *See Wells, Waters & Gases, Inc. v. Air Products & Chemicals, Inc.*, 19 F.3d 157, 159–60 (4th Cir.1994) (stating that a contract for sale can come into existence as result of parties' conduct).

Further, it is inconsequential that the completion of the sale occurred in West Virginia. In *United States v. Sylvester*, the Ninth Circuit determined that because the parties came to an agreement of sale and made partial payment in a state that prohibits the sale, and despite the fact that the remainder of the payment and the delivery were made elsewhere, a "sale" occurred in violation of the underlying state law for purposes of the Lacey Act. 605 F.2d 474, 475 (9th Cir.1979). The court affirmatively agreed with the district court, which had held that "the language of the Lacey Act relates to a situation such as this where the sale is an integral part of the interstate transfer of wildlife products." *Id.* Also, delivery is not necessary for a transaction to constitute a sale; all that is necessary is conduct sufficient to show an agreement of sale. *See* VA.CODE ANN. § 8.2–204. In this case, the sale of the galls was an integral part of the interstate transfer of wildlife products, as discussed in subsection III.D below, and the fact that delivery occurred in West Virginia is not significant.

In addition, it is enough to show that the defendant made an "offer for sale" in order to prove an underlying violation of Virginia law. Because the activity of the defendant and the agent constitutes a "sale" under Virginia law, the court need not reach the issue of whether an the defendant made an "offer for sale." Regardless, the court notes that under Virginia Code § 29.1–553, it is a violation of Virginia law to merely "offer for sale" any "wild animal, or any part thereof ... except as provided by law." VA.CODE ANN. § 29.1–553. During the phone conversations that took place in January, the defendant offered gall bladders for sale. Because interstate commerce can take place over the telephone, the offer for sale took place in both Virginia, where Stump was located, and West Virginia, where Dove was located. Thus, there was an underlying violation of Virginia law in both the defendant's sale of black bear gall bladders and in his mere offer for sale of the gall bladders to the agent. This constitutes the underlying state law violation and thus satisfies the first element required for proving a violation of the Lacey Act.

## D.

■ The second element of a Lacey Act violation, the importation, exportation,

transportation, selling, receiving, acquiring or purchasing of wildlife in interstate or foreign commerce, is also present in count three of the indictment. Although Dove did not personally transport galls from West Virginia to Virginia on January 18, 1999, he did know that Stump would resell the bear galls outside of West Virginia and thus the galls would be placed in interstate commerce. Stump told Dove that he sold the galls in Virginia after the first purchase was made. Dove also took the affirmative step to place bear galls in interstate commerce when he mailed galls from West Virginia to Virginia so that Stump could make a second purchase of bear galls. Further, Dove discussed with Stump the illegality of selling "legally taken bear parts" in Virginia during a conversation on January 6, 1999, just before the third transaction took place.

The Fourth Circuit has held that the interstate commerce element of a Lacey Act violation is present if the defendant "knew that the [wildlife] would be transported in interstate commerce and took the steps that began their travel to interstate markets." *United States v. Gay–Lord*, 799 F.2d 124, 125 (4th Cir.1986). In *Gay–Lord*, the defendant had discussed the importance of rockfish size for the various markets for the fish in New York and Baltimore and this was evidence that he knew that the rockfish he sold in intrastate commerce were going to be resold in interstate commerce. *Id.* The court stated that he sold rockfish in interstate commerce when he sold them to a company that he knew would sell the rockfish out-of-state. *Id.*

As in *Gay–Lord*, the wildlife at issue was to be transported in interstate commerce following their purchase by Agent Stump, and Dove knew that the galls would be so transported. This constitutes the second element necessary to prove a violation of the Lacey Act. The two elements of the Lacey Act, 16 U.S.C. § 3372(a)(2)(A), are thus satisfied in the present case and there is no infirmity of law in the indictment.

## IV.

For the foregoing reasons, the defendant's motion to dismiss count three of the indictment must be denied. An appropriate order, shall, this day, issue.

### *ORDER*

Before the court is the defendant's August 9, 1999 "Motion to Dismiss Indictment." Defendant Ray Dayton Dove has been charged with three counts of violations of the Lacey Act, 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B), involving the unlawful sale of wildlife. Dove seeks to dismiss count three of the indictment. After a careful consideration of this motion, the government's response, the parties' briefs regarding this matter, and a hearing, it is, for the reasons stated in the attached memorandum opinion, hereby

### ADJUDGED AND ORDERED

that the defendant's August 9, 1999 "Motion to Dismiss Indictment" shall be, and it hereby is, DENIED.

The Clerk of the Court is hereby directed to send a certified copy of this Order to all counsel of record.