PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                                          No. 00-4248

RAY DAYTON DOVE, JR.,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-99-69, CR-99-83)

Argued: January 25, 2001

Decided: April 13, 2001

Before WILLIAMS and TRAXLER, Circuit Judges, and
Raymond A. JACKSON, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Vacated and remanded with instructions by published opinion. Judge
Williams wrote the opinion, in which Judge Traxler and Judge Jackson joined.

**COUNSEL**

**ARGUED:** Frederick Theodore Heblich, Jr., Charlottesville, Virginia, for Appellant. Jean Barrett Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Charlottesville, Virginia, for Appellee.

**OPINION**

WILLIAMS, Circuit Judge:

Ray Dayton Dove, Jr., pleaded guilty to an information charging that he violated the Lacey Act, 16 U.S.C.A. §§ 3372(a)(2)(A), 3373(d)(1) (West 2000), in November and December 1998, by selling or offering to sell black bear gall bladders ("galls") in Virginia in violation of Va. Code Ann. § 29.1-553 (Michie 1997 & Supp. 2000), and placing them in interstate commerce. He also pleaded guilty to an indictment charging that he conspired to sell or offer galls and black bear paws for sale knowing that these items were transported in interstate commerce in violation of the Lacey Act, 18 U.S.C. §§ 3372(a)(2)(A) & 3373(d)(1)(b), and Va. Code Ann. §§ 29.1-553 (Michie Supp. 2000). Dove argues on appeal that the district court erred at sentencing in including as relevant conduct his sale of 118 galls to an undercover agent (the 118 galls sale) because that sale occurred in West Virginia, where the sale of galls is legal. Dove also challenges the district court's estimation of the value of the galls. We vacate Dove's sentence and remand for re-sentencing because we conclude that neither Dove's sale of the 118 galls nor his offer to sell the 118 galls was illegal under Virginia law and thus was not properly included as relevant conduct under the Guidelines.

I.

Dove operated a store in West Virginia where he was licensed to deal in furs, hides, deer antlers, and bears. Between 1996 and 1998, he sold bear galls to Bonnie and Danny Baldwin, both Virginia residents. Dove delivered the galls to the Baldwins in Virginia. The Baldwins resold the galls to Asian customers from northern Virginia, Washington, D.C., and Baltimore. In October 1998, Agent W.K. Stump of the Virginia Department of Game and Inland Fisheries arranged to buy bear galls from Dove, representing that he, too, intended to sell the galls to Asian customers. Dove drove to Abingdon, Virginia, and delivered eleven galls to Stump. In November and December 1998, Dove shipped a total of fourteen galls to Stump in Virginia. In January 1999, a final sale of 118 galls was arranged through a series of telephone calls between Stump in Virginia and Dove in West Virginia. Dove agreed to weigh, inspect, and put bear

tags on each gall, and they agreed on a price and a date and time when Stump would come to get them. On January 18, 1999, Stump, accompanied by several agents, drove to Doves store in West Virginia and purchased the galls.

After his guilty pleas, Dove objected unsuccessfully to the inclusion of the 118 galls sale as relevant conduct and disputed the probation officers estimation of the value of the galls. The district court included the 118 galls sale as relevant conduct, and, after awarding a two-level downward departure for acceptance of responsibility as well as applying a five-level enhancement for the market value of the galls sold, the district court found a total offense level of 12 under the United States Sentencing Guidelines, which, in conjunction with Dove's lack of prior criminal history, yielded a guideline imprisonment range of 10 to 16 months and a supervised release range of two to three years. Without the inclusion of the 118 galls sale as relevant conduct, Dove would have received a four-level, rather than a five-level, enhancement for the value of the galls (using the district court's valuation method), and his offense level would have been 11, yielding an imprisonment range of 8 to 14 months. The district court sentenced Dove to 5 months of imprisonment and 36 months of supervised release, with five months of his supervised release term to be served as home detention.[1] Dove contends on appeal that the 118 galls sale was not criminal conduct because it occurred in West Virginia where the sale of bear galls is lawful. The Government argues that the 118 galls sale "in its entirety" violated Virginia law, and that the 118 galls were correctly included as relevant conduct. The critical issues on appeal are whether Dove violated Virginia law and, separately, the Lacey Act in connection with the 118 galls sale and the propriety of the district court's method of valuing the galls sold.

II.

We review the district court's factual findings at sentencing, including the determination of relevant conduct, for clear error. *See*

---

[1]The district court was authorized by United States Sentencing Commission, *Guidelines Manual*, § 5C1.1(d)(2) (Nov. 1998), to provide that up to one-half of Dove's term of imprisonment be served via a term of supervised release that includes home confinement.

*United States v. Fletcher*, 74 F.3d 49, 55 (4th Cir. 1996). Review of pure questions of law relative to a guideline determination when the relevant facts are undisputed is de novo. *United States v. Ruhe*, 191 F.3d 376, 390 (4th Cir. 1999).

A.

The district court denied Doves objection to the inclusion of the 118 galls sale as relevant conduct for sentencing purposes. Its reasoning was explained in its previous order denying Doves motion to dismiss Count Three of the original indictment,[2] which charged that Dove violated Virginia law and the Lacey Act in connection with the 118 galls sale. *See United States v. Dove*, 70 F. Supp.2d 634, 636-39 (W.D. Va. 1999).

As a threshold matter, the Government argues that "non-benign" conduct may properly be considered as relevant conduct. However, if conduct which is not illegal may be relevant conduct because it is "not benign," this approach would involve sentencing courts in the impossibly subjective task of determining the relative "benignness" of various legally permissible acts, and "would allow individuals to be punished by having their guideline range increased for activity which is not prohibited by law but merely morally distasteful or viewed as simply wrong by the sentencing court." *United States v. Peterson*, 101 F.3d 375, 385 (5th Cir. 1996); *see also United States v. Wilson*, 980 F.2d 259, 262 (4th Cir. 1992) (noting that the task of a district court in determining the amount of loss is to determine the amount "that is attributable to [the defendant's] criminal conduct"); *United States v. Dickler*, 64 F.3d 818, 830-31 (3rd Cir. 1995) (agreeing that "relevant conduct" under § 1B1.3 must be criminal conduct). We thus conclude that relevant conduct under the Guidelines must be criminal conduct.

In its order denying Doves motion to dismiss Count Three of the original indictment, the district court held that Count Three properly charged (1) a sale of wildlife in violation of Va. Code Ann. § 29.1-553,[3]

---

[2]Count Three was dismissed on the Governments motion.

[3]Va. Code Ann. § 29.1-553 provides in relevant part: "[a]ny person who offers for sale, sells, offers to purchase, or purchases any wild bird or wild animal, or any part thereof . . . shall be guilty of a Class 1 misdemeanor," and provides further that the crime is a felony if the value of the animals or parts exceeds $200. Va. Code Ann. § 29.1-553 (Michie 1997 & Supp. 2000).

and (2) transportation of the illegally sold wildlife in interstate commerce. *Dove*, 70 F. Supp.2d at 638-39. Although it was actually Stump who transported the 118 galls into Virginia, the district court found that Dove placed the galls in interstate commerce by selling them to Stump because Dove believed that Stump would take them to Virginia and resell them. *Id.* at 639.

The Lacey Act is a federal statute that imposes federal penalties for certain violations of state law, and provides in part that it is unlawful for any person "to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce . . . any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State." 16 U.S.C.A. § 3372(a)(2)(A) (West 2000). Thus, Dove's conduct did not violate the Lacey Act unless the wildlife he sold had been "taken, possessed, transported or sold in violation" of Virginia law. *Id.* The only Virginia provision which the Government argues as a basis for finding Dove's conduct illegal is § 29.1-553, and that provision, we conclude, prohibits the sale of the bear galls at issue in this case, but not their transportation or possession.[4]

In its ruling, the district court relied upon our decision in *United States v. Gay-Lord*, 799 F.2d 124, 126 (4th Cir. 1986), in which we held that a defendant who sold illegally taken rockfish to federal agents "knew that the rockfish would be transported in interstate commerce and took the steps that began their travel to interstate markets," and thus violated the Lacey Act. *Id.* at 126. *Gay-Lord*, however, is

---

[4]Other provisions of Virginia law could be read to permit the possession and transportation of the galls at issue in this case. *See* Va. Code Ann. § 29.1-553 (Michie 1997 & Supp. 2000) (not prohibiting the transportation or possession of animal parts); Va. Code Ann. § 29.1-521 (Michie 1997 & Supp. 2000) (prohibiting transportation or possession of wild animals except as otherwise permitted by law); Va. Code Ann. § 29.1-542 (Michie 1997 & Supp. 2000) (permitting importation of wild animals legally taken in another state); Va. Code Ann. § 29.1-541 (Michie 1997 & Supp. 2000) (permitting storage, hence possession, of wild animals where sale would be illegal, in the home or a licensed storage location). We have no occasion to interpret the meaning of these provisions, because they were not argued to us by the parties in this case. *See Williams v. Chater*, 97 F.3d 702, 706 (5th Cir. 1996) (noting that ordinarily, issues not raised in briefs are waived).

distinguishable. In that case, it was uncontroverted that the rockfish sold in interstate commerce had first been taken in violation of state law. *Id.* at 125. Here, no argument is made that the 118 galls were taken, possessed, or transported in violation of the law of any state; thus, unless Virginia law prohibited the sale in West Virginia of the 118 galls, Dove's act of placing them into interstate commerce did not violate the Lacey Act. The standard which must be met to satisfy the "interstate commerce" aspect of the Lacey Act is not a demanding one, as *Gay-Lord* illustrates. But Virginia's principles of criminal jurisdiction, as the following discussion illustrates, are not coextensive with the federal definition of interstate commerce, and the Lacey Act is not violated unless the animal parts which move in interstate commerce have been "taken, possessed, transported or sold" in violation of state law.[5]

While the district court interpreted the telephone conversations between Dove and Stump and the subsequent activity of the two men as constituting a "sale" in Virginia, we are not persuaded that a sale took place either in Virginia or in violation of the law of Virginia. A "sale" is defined under Virginia law as "the passing of title from the seller to the buyer for a price." Va. Code Ann. § 8.2-106 (Michie 1991 & Supp. 1999) (cross reference omitted). Here, title passed in West Virginia, and no "sale," as Virginia defines that term in Va. Code Ann. § 8.2-106, occurred in Virginia.

Nor can the Government rely on the "results theory" of jurisdiction to establish that Dove's sale in West Virginia violated Virginia law.

---

[5]The Government notes that the Ninth Circuit, in *United States v. Sylvester*, 605 F.2d 474, 475 (9th Cir. 1979), held that an actual "sale" in violation of state law is not necessary to sustain a Lacey Act violation, reasoning instead that offer, acceptance and partial payment in a jurisdiction where sale is prohibited constitute "sufficient sales activity" to support a Lacey Act conviction. *Id.* at 475. To the extent that *Sylvester* holds that a legal sale following interstate delivery may form the predicate for a Lacey Act violation, we disagree, as the text of the Lacey Act requires not merely a sale but a sale "in violation of any law . . . of any State." 16 U.S.C.A. § 3372(a) (West 2000). We note, however, that on its own terms *Sylvester* is distinguishable, as no partial payment was made and no other sufficient sales activity occurred in Virginia in this case.

The "results theory" holds that physical presence in a state is not necessary to create criminal jurisdiction over an act "if the crime is the immediate result of the accused's act; under such circumstances, the accused may be tried in the state's courts even though actually absent at the time the act was committed." *Moreno v. Baskerville*, 452 S.E.2d 653, 655 (Va. 1995) (internal quotation marks omitted). However, this exception to the general rule that "every crime to be punished in Virginia must be committed in Virginia," *Farewell v. Commonwealth*, 189 S.E. 321, 323 (Va. 1937), is not without its limits. In *Moreno v. Baskerville*, the defendant, Moreno, sold marijuana in Arizona to Moore, whom he knew would distribute the marijuana to his associates for sale in Virginia. *Moreno*, 452 S.E.2d at 654. The Virginia Supreme Court held Moreno's resulting conviction for distribution of marijuana invalid on the grounds that, despite Moreno's knowledge that the drugs would be resold in Virginia, their resale was not the "immediate result" of the distribution of drugs in Arizona. *Id.* at 655. Instead, Moore's distribution of the marijuana to his associates in Virginia intervened, so that the situation was "entirely unlike a case in which a shot fired across a state line 'immediately' results in harm, thus enabling the forum state to exercise extraterritorial jurisdiction over the assailant." *Id.* Here, the Government does not argue that Virginia law prohibits the possession of the galls in question.[6] Thus, the bringing about of an illegal result depended on Stump's resale of the galls in Virginia. Stump's resale of the galls, which never occurred because Stump was an undercover agent, is precisely the sort of intervening act which, under Virginia jurisdictional principles as elaborated in *Moreno*, negates the immediacy of the resulting harm and renders the "results theory" of jurisdiction inapplicable. Thus, Dove's sale of the galls in West Virginia did not violate Virginia law because it occurred outside the boundaries of Virginia jurisdiction.[7]

---

[6]*See* Va. Code Ann. §§ 29.1-541, 29.1-542 (Michie 1997 & Supp. 2000) (permitting the importation of legally taken wildlife and the home storage of wildlife whose sale is prohibited by law).

[7]*Keselica v. Commonwealth*, 480 S.E.2d 756, 759-60 (Va. App. 1997), is not to the contrary. In *Keselica*, a conviction for embezzlement was upheld because although the act of embezzlement occurred in Maryland, the defendant used the mails and telephone to solicit funds from Virginia residents "for the sole purpose of diverting the funds to his own use." *Id.* at 759. In *Keselica*, the embezzlement at issue was illegal in both states.

### B.

The district court also found that Dove violated Va. Code Ann. § 29.1-553 by making an offer of sale in Virginia during his communications with Stump over the telephone. The Government contends that Doves offer occurred "over the telephone in Virginia." (Appellee's Br. at 9.) We initially note that in cases involving communications by mail or telephone, Virginia courts have often applied the "results theory," suggesting that Virginia courts do not deem telephone offers to constitute actual conduct in Virginia but instead view such offers as acts outside Virginia intended to cause an immediate unlawful result in Virginia. *See Keselica v. Commonwealth*, 480 S.E.2d 756, 759-60 (Va. App. 1997); *see also Travelers Health Ass'n v. Commonwealth*, 51 S.E.2d 263, 268 (Va. 1949) (concluding that company which offered securities to Virginia residents through the mails in violation of Virginia regulations could be prosecuted based on results theory); *cf. O'Briant v. Daniel Constr. Co.*, 305 S.E.2d 241, 243 (S.C. 1983) (stating, "[w]here acceptance is given by telephone, the place of contracting is where the acceptor speaks his acceptance"). In any event, the resolution of this question has no bearing in this case because Dove's telephone offer to sell the galls to Stump, in response to Stump's offer to buy, was, at minimum, plainly an act outside Virginia intended to produce an immediate result in Virginia; it was to a statute prohibiting an "offer" what a rifle shot fired at a Virginia resident from another state is to a statute prohibiting assault with a firearm.

While we believe that Virginia could assert jurisdiction, based on the results theory, to prosecute Dove for his telephone offer to sell galls, that is not the end of the inquiry. Dove urges that Va. Code Ann. § 29.1-553's prohibition on "offering for sale" any animal part

---

Further, the use of the mails and telephone to defraud Virginia residents is clearly the kind of act contemplated by the results theory. It is performed in another jurisdiction but, in a direct and unmediated fashion, inflicts harm in Virginia. A financial fraud scheme conducted by mail and telephone is clearly distinguishable from a telephone conversation followed by a legal sale in another jurisdiction, where possession of the item sold is not illegal in Virginia.

must be read in conjunction with the offense of "sale" itself; in other words, Dove argues that "offer to sell" is essentially a codification of a crime analogous to attempt, and the "sale" which is "offered" must be illegal in order for the offer to violate § 29.1-553. *Cf. Parham v. Commonwealth*, 347 S.E.2d 172, 173-74 (Va. App. 1986) (noting that legal impossibility is a defense to a charge of attempt). Because Dove offered to sell galls in West Virginia, and the contemplated sale did not violate the law of Virginia, Dove argues that his offer to sell, whether or not within Virginia criminal jurisdiction, did not violate the statute.

We believe that some ambiguity exists as to whether § 29.1-553's prohibition on "offers to sell" encompasses offers to engage in legal sales. In light of the nature of Virginia's interest in protecting the integrity of its wildlife, it would seem anomalous to read "offer to sell" as stating a freestanding offense which is capable of existing when the offered transaction does not violate Virginia law. For example, the Government's construction of the "offer to sell" language would apply § 29.1-553 to prohibit two residents of states in which a sale is legal from contracting in Virginia to sell animal parts, even where the transaction will be performed entirely outside of Virginia and will not touch Virginia in any way. We believe the better reading of § 29.1-553 is that "offers to sell" are illegal only when the sale that is offered would be illegal; we believe the most reasonable construction of the "offer to sell" language is that it functions to facilitate prosecution of attempts to sell animal parts in violation of Virginia law even where the sale is never carried out. Our conclusion is buttressed by Virginia's rule of lenity, which provides that while a criminal defendant is not entitled to an unreasonably restrictive construction of a statute, penal statutes "must be strictly construed and any ambiguity or reasonable doubt as to [their] meaning must be resolved in [the defendant's] favor." *Ansell v. Commonwealth*, 250 S.E.2d 760, 761 (Va. 1979).

Here, the district court found that the January 14, 1999 conversation between Dove and Stump was the time of agreement on the specific terms of the January 18 sale, including price, quantity and other key terms. *United States v. Dove*, 70 F. Supp.2d at 636. In his January 14 telephone conversation, Dove indicated that he would not be able to deliver the galls that were to be sold on January 18 and urged

Agent Stump to call him to discuss the matter further at a later date. (J.A. at 102.) Only when Stump indicated that he was willing to come to West Virginia to pick up the galls did Dove's language indicate a definite acceptance of Stump's offer. We conclude that Dove did not make an offer to engage in an illegal sale in Virginia, and thus, his telephone offer did not violate Va. Code Ann. § 29.1-553.

### III.

Dove next challenges the district court's determination as to the market value of the galls he sold. The guideline applicable to a Lacey Act violation, United States Sentencing Commission, *Guidelines Manual*, § 2Q2.1 (Nov. 1998), provides for an enhancement from the table in USSG § 2F1.1 if the market value of the wildlife exceeds $2000. Application Note 4 states that, where "information is readily available, 'market value' under subsection (b)(3)(A) shall be based on the fair-market retail price. Where the fair-market retail price is difficult to ascertain, the court may make a reasonable estimate using any reliable information . . . ." U.S.S.G. 2Q2.1, comment (n.4).

The district courts calculation of the market value of the bear galls is a factual question that is reviewed for clear error. *United States v. Eyoum*, 84 F.3d 1004, 1008 (7th Cir. 1996). Dove argues that the market value should be the price for galls in West Virginia where such sales are legal. Dove also argues that the district court erred in applying *Eyoum*, which held that the retail value for pancake tortoises rather than the lower "smugglers price" should be used. *See id.* at 1007. Dove contends that his lower price was the retail price because he was operating in a legal market. Dove believed, however, that both the Baldwins and Stump intended to resell the galls. Therefore, they were not buying at retail. The district court was aware that the price paid by the ultimate consumers was higher, but it had no firm evidence of what the retail price might be. The district court used the highest price for which it had reliable evidence — the Baldwins average retail price of $280 per gall. The district court did not clearly err in doing so.

### IV.

In conclusion, we find that the district court erred in including as "relevant conduct" Dove's sale of 118 galls, because relevant conduct

under the Guidelines must be criminal conduct, and neither Dove's January 18 sale nor his telephone acceptance of Stump's offer to buy violated Virginia law or the Lacey Act. We find, however, that the district court's method for calculating the market value of the galls was proper. We thus vacate Dove's sentence and remand with instructions to the district court to recalculate Dove's sentence without including as relevant conduct the January 18 sale of 118 galls.

*VACATED AND REMANDED WITH INSTRUCTIONS*