**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

BOBBY JAMES BROWN,
*Defendant-Appellant.*

No. 01-4672

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

THOMAS EDWARD CARTER,
*Defendant-Appellant.*

No. 01-4673

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JULIUS BROWN,
*Defendant-Appellant.*

No. 01-4680

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CR-00-100-MD)

Argued: June 6, 2003

Decided: July 14, 2003

Before WILKINS, Chief Judge, and WILLIAMS and
TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** William B. Purpura, Baltimore, Maryland; Gary Allen Ticknor, Baltimore, Maryland, for Appellants. James Gerard Pyne, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Peter Ward, Towson, Maryland, for Appellant Julius Brown. Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Bobby Brown, Julius Brown, and Thomas Carter (Appellants) appeal from their convictions of conspiring to possess with intent to distribute and to distribute controlled substances under 21 U.S.C.A. § 846 (West 1999), and related offenses. All three Appellants argue that the district court erred in denying their motions for a mistrial based on allegedly improper statements made by the prosecutor during closing arguments, that the district court erred in applying the murder cross-reference of United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(d)(1) (2000) in calculating their sentences, and that the district court erred in sentencing them for multiple convictions under 18 U.S.C.A. § 924(c) (West 2000) based on a single predicate drug trafficking offense. Bobby Brown objects to the district court's application of a two-level obstruction of justice enhancement, pursuant to U.S.S.G. § 3C1.1 (2000), in the calculation of his offense level. Finding no reversible error, we affirm.

I.

On August 8, 2000, Appellants were indicted along with several other defendants in an eleven-count Second Superseding Indictment in the United States District Court for the District of Maryland. The indictment charged Appellants with conspiracy to possess with intent to distribute and to distribute specified quantities of heroin, cocaine base, and cocaine, in violation of 21 U.S.C.A. § 846 (Count 1), and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C.A. § 924(c) (Counts 7 and 8). Julius Brown also was charged in the indictment with possession with intent to distribute and distribution of heroin, in violation of 21 U.S.C.A. § 841 (West 1999) (Counts 2, 3, 4, and 5), threatening a grand jury witness, in violation of 18 U.S.C.A. § 1512(b) (West 2000) (Count 9), attempting to kill a grand jury witness, in violation of 18 U.S.C.A. § 1512(a) (Count 10), and possessing a firearm while having been previously convicted of one or more crimes punishable by imprisonment for more than one year, in violation of 18 U.S.C.A. § 922(g)(1) (West 2000) (Count 11).[1] Bobby Brown and Carter also were charged with using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C.A. § 924(c) (Count 6).

At the conclusion of a month-long jury trial, Appellants joined in a motion for a mistrial based on certain allegedly improper statements made by the prosecution during its rebuttal closing argument. The district court denied the motion, concluding that although some parts of the prosecution's closing argument were "very close to the line," and perhaps even improper, (J.A. at 509-10), those portions of the closing argument did not warrant a mistrial.

The jury found each Appellant guilty as to Count 1, and made specific findings that the conspiracy involved 100 grams or more of heroin and 50 grams or more of cocaine base. Each Appellant was also found guilty on Counts 7 and 8, charging possession of firearms in furtherance of a drug trafficking crime. In addition, Julius Brown was found guilty on Counts 2, 3, 4, and 5, charging distribution of heroin, and Count 9, charging the threatening of a grand jury witness. The

---

[1]Count 11 was subsequently dismissed.

jury acquitted Bobby Brown and Carter on Count 6 and Julius Brown on Count 10.

Separate sentencing proceedings were held for each Appellant. Bobby Brown and Carter were each sentenced to life imprisonment on Count 1, five-years' imprisonment on Count 7, and twenty-five years' imprisonment on Count 8, the sentences to run consecutively. Julius Brown was sentenced to life imprisonment on Count 1, twenty years' imprisonment on Counts 2 through 5, five years' imprisonment on Count 7, twenty-five years' imprisonment on Count 8, and ten years' imprisonment on Count 9, the sentences on Counts 1, 7, and 8 to run consecutively, and the remaining sentences to run concurrently with the life sentence on Count 1. Each Appellant timely noted an appeal.

## II.

Appellants argue that the district court erred in denying their motion for a mistrial based on the prosecution's allegedly improper statements. The denial of a motion for a mistrial is reviewed for abuse of discretion. *United States v. Cole*, 293 F.3d 153, 163 (4th Cir. 2002).[2]

Appellants' claim of error in the denial of their motion for a mistrial rests on an allegation of prosecutorial misconduct, specifically the assertedly improper remarks contained in the prosecution's closing argument. We examine a claim of prosecutorial misconduct to

---

[2]Appellants suggest that our standard of review must be de novo, relying on *United States v. McDonald*, 61 F.3d 248 (4th Cir. 1995) (overruled on other grounds by *United States v. Wilson*, 205 F.3d 720 (4th Cir. 2000) (en banc)). In *McDonald*, we concluded that the district court's denial of a motion to quash the indictment, based on alleged prosecutorial misconduct before the grand jury, should be reviewed de novo where the district court "made no factual findings regarding the existence of prejudicial misconduct by the government prior to denying [the defendant's] motion." *Id.* at 253. *McDonald* is inapposite because our review in that case was of a motion to quash an indictment based on alleged misconduct before a grand jury, rather than, as here, a motion for a mistrial based on alleged misconduct during a month-long trial before the district court.

determine whether the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002) (addressing prosecution's improper reference to evidence admitted only against one defendant in closing argument arguing that another defendant was guilty) (citations and internal quotation marks omitted). "The test for reversible prosecutorial misconduct has two components; first, the defendant must show that the prosecutor's remarks or conduct were improper and, second, the defendant must show that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." *Id.*

In assessing the second prong of this test, prejudice, this court considers six factors:

> (1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the defendant; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury.

*Id.* at 186. The allegedly improper remarks "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Young*, 470 U.S. 1, 12 (1985).

Appellants place the allegedly improper statements by the prosecution in this case into five categories: (1) statements misrepresenting the facts in evidence; (2) statements accusing defense counsel of engaging in unethical conduct; (3) statements attacking defense counsel's personal credibility; (4) statements improperly placing a burden on the defense; and (5) statements "denigrat[ing] the right to a jury trial." (Appellants' Br. at 16.)[3] We address the allegedly improper remarks in each of these categories below.

---

[3]Appellants identify a large number of lines in the trial transcript as containing improper statements by the prosecution, all of them within the

Appellants identify as statements allegedly misrepresenting the evidence the following: the prosecution's attempts to explain why a certain witness hesitated in answering questions or became confused on cross examination, (J.A. at 446-47) (explaining that witness McGraw hesitated in identifying a picture of Appellant Carter because of a momentary "mental block"); the prosecution's statement that the absence of wiretap evidence, pointed out by the defense, should not diminish the force of the proof presented to the jury in light of the difficulty of obtaining wiretap authorization, (J.A. at 457) ("Agent Ellington [a prosecution witness] made it clear that it is impossible to get a wiretap. You have an exhaustion requirement. You need to go to a judge and say, listen, we have been unable to get evidence against this guy by any other means and, therefore, we need a wiretap. That was absolutely impossible in this case."); the prosecution's suggestion that negative results on urinalysis tests performed on Bobby Brown between May of 1998 and June of 1999 did not prove that he had not been handling drugs during that time, in light of testimony indicating that he wore a mask and gloves while preparing drugs for sale, (J.A. at 462); the prosecution's statement that evidence showed defendant Carter was wearing jeans at a certain point, rather than sweatpants, as defense counsel had suggested, and could thus have put a gun in his waistband, (J.A. at 467); and the prosecution's rebuttal of defense counsel's suggestion that the transcripts of recordings submitted into evidence were inaccurate by pointing out that the defense could have

---

prosecution's rebuttal closing. (Appellants' Br. at 16.) Only a few of the statements in question are discussed specifically in the brief, and even fewer were actually objected to at trial. The Government contends that as to those statements to which an objection was not raised, we must review only for plain error. *United States v. Loayza*, 107 F.3d 257, 262 (4th Cir. 1997) (noting that "[w]here no objection was raised below, the [prosecutor's allegedly improper] remarks are reviewed for plain error"). To the extent that any of the prosecutorial statements in question were improper or erroneous, they were not prejudicial, and thus the distinction between plain and harmless error is immaterial in this appeal. *See United States v. Strickland*, 245 F.3d 368, 379-80 (4th Cir. 2001) (noting that while the burden of demonstrating prejudice varies, prejudice must be apparent to merit relief under either plain or harmless error review). Accordingly, we do not distinguish herein between statements to which Appellants objected at trial and those to which they did not.

made its own transcripts, (J.A. at 470). The majority of these statements are most easily described as suggested explanations for evidence presented to the jury, rather than as descriptions of that evidence. For instance, in explaining McGraw's hesitation in identifying Carter, the prosecution was conceding that McGraw hesitated, and attempting to explain why. Similarly, the prosecution conceded that Bobby Brown's urinalysis results were negative, and attempted to explain how that fact could comport with its theory of the case. It is the role of the jury to sift through competing explanations of this sort for evidence offered at trial, and it is to a jury that a defendant must contend that prosecutorial explanations such as these are unconvincing. *See, e.g.*, *Matthews v. Abramajtys*, 319 F.3d 780, 790 (6th Cir. 2003) ("The actual resolution of the conflicting evidence, the credibility of witnesses, and the plausibility of competing explanations is exactly the task to be performed by a rational jury."). Appellants' contention that these statements amount to improper "misrepresentations" is therefore unavailing. Further, to the extent the statements Appellants identify contain factual representations about the evidence offered at trial, we cannot conclude that any of these statements is appropriately described as a "misrepresentation" in light of Appellants' failure to identify the basis for such a conclusion in briefing or argument to this court. *See Scheetz*, 293 F.3d at 185 (noting that burden on appeal is on defendant to demonstrate impropriety of allegedly improper remarks).

As to the prosecution's statements that Appellants characterize as accusing defense counsel of "unethical conduct," we view only one such remark as improper: the prosecution's suggestion that defense counsel's statements while cross-examining witnesses were "[t]he most dishonest statement[s] that you heard in this entire trial". (J.A. at 481-82.)[4] The district court sustained defense counsel's objection to this statement, and admonished the prosecution and the jury that "[i]t's not appropriate to say that counsel were lying to the jury." (J.A.

---

[4]The other statements so categorized by Appellants are the prosecution's statement that defense counsel was "blatantly wrong" in his description of witness Joe Davis's testimony, (J.A. at 452), and the prosecution's reference to the inconsistency involved in defense counsel's encouraging the jury to believe witness Anthony Dickerson for some purposes, but not others, (J.A. at 477).

at 482.) The judge's statement in open court that this remark was improper, though not a curative instruction, diminished the possibility that the improper remark would prejudice the jury. More importantly, the district court noted the impropriety of the statement and determined that it was sufficiently isolated so as not to constitute grounds for a mistrial. In this regard the district court properly exercised its discretion, to which we here defer.

The statements allegedly attacking defense counsel's personal credibility, if improper, were not prejudicial. The statements identified by Appellants in this category are references by the prosecution to defense counsel's being "desperate" to establish one proposition or another, to defense counsel's attempts to "trick" witnesses,[5] to defense counsel's being "slick" lawyers, and to other aspects of the way defense counsel conducted the trial. *See* (J.A. at 465-66) (prosecution asserting that defense counsel were "desperate" to paint Count 6 as "a murder count"); (J.A. at 469) (prosecution commenting on defense counsel's habit of laughing at witnesses to show that he didn't believe them); (J.A. at 475) (prosecution stating that whatever defense counsel might have suggested about the elements necessary for a conspiracy conviction, the jury should follow the district court's instructions); (J.A. at 480-81) (prosecution stating that a witness's statement "was not a lie. That was [defense counsel] tricking [the witness]"). Viewed in light of the month-long trial as a whole and the strength of the evidence against Appellants, we cannot conclude that these statements were prejudicial to Appellants.

The statements Appellants identify as improperly placing a burden on them are in fact simply statements pointing out the defense team's

---

[5]Appellants do not dispute that on a number of occasions during the trial, defense counsel said to witnesses, "I'm not trying to trick you," or words to that effect. We note that whether a particular prosecutorial comment was an "invited response," intended to "right the scale" after an improper remark by defense counsel, is a relevant consideration in assessing a district court's denial of a motion for a mistrial. *United States v. Young*, 470 U.S. 1, 12-13 (1985). We need not decide here whether the prosecution's statements indicating that witnesses were "tricked" amounted to an "invited response," because these statements were, in any event, not prejudicial error.

failure to impeach certain witnesses with grand jury testimony. *See, e.g.*, (J.A. at 447) (pointing out defense's failure to identify inconsistencies between grand jury and trial testimony of witness McGraw); (J.A. at 448) (pointing out that defense counsel managed to identify only two inconsistencies between grand jury testimony and trial testimony of witness Allen). Appellants have identified no instance in which the prosecution suggested that it was Appellants' burden to disprove the charges against them; rather, the prosecution simply pointed out that the defense had failed to impeach certain witnesses, inviting the jury to conclude that the witnesses were reliable. We find no impropriety in these statements.

Finally, Appellants identify two statements as having "denigrat[ed] the right to a jury trial." They point to a reference during the prosecution's closing argument to defense counsel's earlier emphasis on the historical importance of juries:

> Mr. Ward [defense counsel], as I predicted, referenced the Magna Carta in his closing statement. He said everything but Magna Carta, but you know that 800 years ago at Runnymede, the Magna Carta was signed with King John. [Mr. Ward] talked to you about the value of the jury system, how it is sacred to our society and our system of justice. He said that you are a jury of peers, and he emphasized that you are the last hope for these defendants . . . . They kill people, they beat people, they sell drugs . . . . You are the jury. It's up to you. You decide as the last line of defense whether these three men go back in the streets.

(J.A. at 495-96.) These remarks do not appear necessarily to "denigrate" the right to a jury trial. Nevertheless, remarks intended to enlist a jury as the "conscience of the community" may be improper where they are calculated to inflame the jury. *See United States v. Duffaut*, 314 F.3d 203, 211 (5th Cir. 2002) (noting that "a prosecutor may appeal to the jury to act as the conscience of the community, so long as the comments are not calculated to inflame" (internal quotation marks and alterations omitted)); *United States v. Beasley*, 2 F.3d 1551, 1559-60 (11th Cir. 1993) (concluding that several statements by prosecution instructing jury that it was a participant in a broad "war on drugs" were "appeal[s] by the prosecutor for the jury to act as 'the

conscience of the community,'" were "calculated to inflame" the jury, and were thus improper). Even assuming some inflammatory purpose, and thus impropriety, in these remarks, however, we cannot conclude that they prejudiced Appellants.

In assessing the district court's resolution of a motion for a mistrial, we must "accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by [an] improper comment." *Arizona v. Washington*, 434 U.S. 497, 511 (1978). The able and experienced district court here presided over a month-long trial, which was at times highly contentious, with zealous advocacy apparent on both sides. We cannot conclude that it abused its discretion in denying the motion for a mistrial based upon isolated portions of the prosecution's rebuttal closing argument.

## III.

Appellants next contend that the district court erred in applying the murder cross-reference of U.S.S.G. § 2D1.1(d)(1) (2000) in calculating their sentences. Section 2D1.1(d)(1) of the Sentencing Guidelines states that "[i]f a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." Appellants contend that permitting application of this cross-reference permits them to be sentenced for a murder that was not proved to a jury beyond a reasonable doubt. Appellants' contention is meritless in light of our conclusion that "[t]he guidelines direct that in sentencing drug offenders, the court must enhance the sentence when a killing occurs in the course of a drug trafficking conspiracy 'under circumstances that could constitute murder under 18 U.S.C. § 1111.'" *United States v. Montgomery*, 262 F.3d 233, 249 (4th Cir. 2001) (quoting U.S.S.G. § 2A1.1). Accordingly, the district court did not err in applying the cross-reference in question.

## IV.

Appellants' final joint contention is that the district court erred in sentencing them for multiple violations of 18 U.S.C.A. § 924(c) based

on the same predicate drug offense. As with Appellants' previous contention, we have rejected precisely this argument. In *United States v. Camps*, 32 F.3d 102 (4th Cir. 1994), we were presented with the argument that "multiple consecutive sentences cannot be imposed for multiple section 924(c)(1) convictions if those convictions arise out of the events of a single predicate offense." *Id.* at 106. We reasoned that because such a claim amounts to an argument that the defendant "cannot be punished more than once for having committed only one offense, [the] claim sounds in Double Jeopardy." *Id.* at 106. Because the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended," we examined § 924(c) for congressional intent regarding multiple, separate acts of "using and carrying"[6] a firearm in violation of that section during a single ongoing drug offense. *Id.* at 106 (citations and internal quotation marks omitted). Based on the language of the statute, we concluded that

> a defendant who has engaged in numerous instances of the precise conduct that Congress has outlawed has committed more than one criminal offense. A defendant who has "used" or "carried" a firearm on several separate occasions during the course of a single continuing offense, therefore, has committed several section 924(c)(1) offenses.

*Id.* at 107. Accordingly, such a defendant "properly receive[s] five years for the first use, [and] [twenty-five[7]] years consecutive for the second," as did Appellants here. *Id.* at 109; *see also United States v.*

---

[6]At the time of our decision in *Camps*, § 924(c) criminalized only "us-[ing] or carr[ying]" a firearm during and in relation to a crime of violence or drug trafficking crime. After the Supreme Court held in *Bailey v. United States*, 516 U.S. 137 (1995), that "use" requires active employment rather than mere possession, *id.* at 150, Congress amended § 924(c) to include a person who, "in furtherance of any such crime, possesses a firearm." Criminal Use of Guns, Pub. L. 105-386, § 1, 112 Stat. 3469 (1998).

[7]When we decided *Camps*, § 924(c)(1)(C) called for a sentence of twenty years for a second § 924(c)(1) offense. That section now calls for a twenty-five year sentence for a second such offense. *See* § 924(c)(1)(C).

*Carter*, 300 F.3d 415, 424 (4th Cir. 2002) (noting that this issue was addressed and decided in *Camps*, and labeling defendant's contention a "non-starter").

V.

Finally, Bobby Brown argues that the district court erred in applying a two-level obstruction of justice enhancement, pursuant to U.S.S.G. § 3C1.1, in the calculation of his offense level. The district court's determination that the obstruction of justice enhancement in § 3C1.1 is applicable is a factual determination that we review for clear error. *United States v. Dove*, 247 F.3d 152, 155 (4th Cir. 2001); *United States v. Castner*, 50 F.3d 1267, 1279 (4th Cir. 1995). The obstruction of justice enhancement was applied in calculating Bobby Brown's offense level for Count 1, the drug conspiracy charge, and raised the offense level for that count from 47 to 49.

At offense level 43 or above, the Guidelines require a mandatory life sentence. U.S.S.G. ch. 5, pt. A (Sentencing Table). A two-level reduction in Bobby Brown's offense level for Count 1 would reduce his offense level only to 47, still mandating a life sentence. Any error in the district court's application of the obstruction of justice enhancement was thus harmless. *Williams v. United States*, 503 U.S. 193, 203 (1992) (noting that a district court's sentencing error is subject to harmless error analysis, and remand is not required if "the error did not affect the district court's selection of the sentence imposed"); *see also United States v. McCrary*, 887 F.2d 485, 489 (4th Cir.1989) (noting that error in calculating criminal history category warrants remand only when possible sentencing ranges are different). Had we resolved his contention regarding the murder cross-reference differently, *see* Part III, *supra*, Brown's argument on this point might bear further examination, because application of the obstruction of justice enhancement to the lower base offense level that would then be applicable might affect his sentence. Given our rejection of his murder cross-reference contention, however, the obstruction of justice enhancement did not in this case affect the appropriate sentence. Thus, while Brown understandably exercised his prerogative to raise the obstruction of justice issue in this forum, we need not consider it.

## VI.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.